Michael S. Kruse (admitted *pro hac vice*)
NIEMEYER, GREBEL & KRUSE, LLC
211 N. Broadway, Suite 2950
St. Louis, MO 63102
314-241-1919 (T)
314-665-3017 (F)
kruse@ngklawfirm.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  ANGIODYNAMICS, INC., AND NAVILYST MEDICAL, INC., PORTCATHETER PRODUCTS LIABILTY LITIGATION | Case No.: **'26 CV 0936 JO   VET** <br> MDL No. 3125 <br><br> JUDGE JINSOOK OHTA |
| DONNA M. WEAVER, an Individual, and ROBERT WEAVER, an Individual, <br><br> Plaintiffs, <br><br> v. <br><br> ANGIODYNAMICS, INC., and NAVILYST MEDICAL, INC., <br><br> Defendants. <br><br> Civil Action No.: _____ | COMPLAINT AND JURY DEMAND |

## COMPLAINT

Plaintiff DONNA M. WEAVER and Plaintiff ROBERT WEAVER (collectively "Plaintiffs") herein, file this Complaint pursuant to CMO No. 1, and are bound by the rights, protections, privileges, and obligations of that CMO. In accordance with CMO No. 1, Plaintiffs hereby designate the United States District Court for the Eastern District of California, Sacramento Division, as the place of remand as this case may have originally been filed there pursuant to 28 U.S.C. § 1391.

COME NOW Plaintiffs, by and through undersigned counsel, and bring this

Complaint against AngioDynamics, Inc., and Navilyst Medical, Inc. (collectively, the "Defendants"), and alleges as follows:

1. This is an action for damages arising out of the failure relating to Defendants' design, development, testing, assembling, manufacturing, packaging, promoting, marketing, distribution, supplying, and/or selling the defective implantable vascular access device sold under the trade name of the SmartPort and/or SmartPort Plastic Port (hereinafter "SmartPort" or "Defective Device").

## PARTIES

2. Plaintiff DONNA M. WEAVER is an adult citizen of Shasta County, California, and claims damages as set forth below.[1]

3. Plaintiff ROBERT WEAVER is the legal spouse of DONNA M. WEAVER, and is an adult citizen of Shasta County, California, and claims damages as set forth below.

4. Defendant AngioDynamics, Inc. ("AngioDynamics") is a Delaware corporation with its principal place of business located in Latham, New York. AngioDynamics is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the SmartPort.

5. Defendant Navilyst Medical, Inc. ("Navilyst") is a Delaware corporation with its principal place of business located in Marlborough, Massachusetts. Navilyst conducts business throughout the United States, including the State of California, and is a wholly owned subsidiary of AngioDynamics. Navilyst is engaged in the business of researching, developing, designing, licensing, manufacturing, distributing, supplying, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, its medical devices, including the SmartPort.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the parties pursuant to 28

---

[1] All references in this Complaint to "Plaintiff" refer to Plaintiff DONNA M. WEAVER unless otherwise so delineated.

U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and cost.

7.     Venue and jurisdiction are proper in this Court pursuant to the Direct Filing provisions of CMO 1 for this litigation.  Absent the provisions of CMO 1, Plaintiffs would have properly filed this action in the United States District Court for the Eastern District of California, Sacramento Division.

8.     Defendants have and continue to conduct substantial business in the State of California, the Eastern District of California, and this District, distribute vascular access products in those places, receive substantial compensation and profits from sales of vascular access products in those places, and made material omissions and misrepresentations and breaches of warranties in those places, so as to subject them to in personam jurisdiction in those places.

9.     Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, this Court, as well as the United States District Court for the Eastern District of California, have in personam jurisdiction over Defendants, because Defendants are present in the State of California and all those Districts, such that requiring an appearance does not offend traditional notices of fair and substantial justice.

## PRODUCT BACKGROUND

10.     In or about 2003, a company called Horizon Medical Products ("Horizon") obtained clearance via the 510(k) Premarket Notification Program from the Food and Drug Administration to market and sell a product called the Triumph VTX Port with LiveValve Catheter under the 510(k) number K032557.

11.     Shortly after the clearance of the Triumph port, Horizon merged with Rita Medical Systems, which was in the process of being acquired by AngioDynamics.

12.     In or about 2007, Rita Medical Systems, Inc. received clearance via the 510(k) Premarket Notification Program from the Food and Drug Administration (FDA) to market and sell a product called Vortex® CT Port Access System.

13.     Around the same time, AngioDynamics completed the acquisition of the assets and liabilities of Rita Medical Systems, Inc. and rebranded the subject product as

SmartPort.

14.    The SmartPort port system bears a design and specifications that differ significantly from the Triumph port (including but not limited to the catheter design and connection hub), but Defendants represented to regulatory authorities that the SmartPort port was cleared under the K032557 submission.

15.    Because the SmartPort port system's design and specifications differ significantly from the Triumph port, which was not communicated to the FDA in the 510(k) submission, the SmartPort is per se misbranded pursuant to the Food, Drug, and Cosmetic Act.

16.    The SmartPort is not substantially equivalent to the Triumph, and substantial equivalence is a fundamental requirement of the FDA's 510(k) clearance process.

17.    Defendants' Vascular Access Devices were designed, patented, manufactured, labeled, marketed, sold, and distributed by the Defendants at all relevant times herein.

18.    The SmartPort is one of several varieties of port/catheter systems that has been designed, manufactured, marketed, and sold by Defendants.

19.    According to Defendants, the SmartPort is a totally implantable vascular access device designed to provide repeated access to the vascular system for the delivery of medication, intravenous fluids, parenteral nutrition solutions, and blood products.

20.    The intended purpose of the SmartPort is to make it easier to deliver medications directly into the patient's bloodstream. The device is surgically placed completely under the skin and left implanted.

21.    The SmartPort is a system consisting of two primary components: an injection port and a silicone or polyurethane catheter which includes additives intended to make it radiopaque.

22.    The SmartPort has many variations, some of which include polyurethane catheters and some of which include silicone catheters.

23.    The injection port has a raised center, or "septum," where the needle is inserted for delivery of the medication. The medication is carried from the port into the

4

bloodstream through a small, flexible tube, called a catheter, that is inserted into a blood vessel.

24. The SmartPort is indicated for patient therapies requiring repeated access to the vascular system. The port system can be used for infusion of medications, I.V. fluids, parenteral nutrition solutions, blood products, and for the withdrawal of blood samples.

25. The product's catheter is compromised of a polymeric mixture of silicone or polyurethane and a barium sulfate radiopacity agent.

26. Barium sulfate is known to contribute to reduction of the mechanical integrity of silicone and/or polyurethane in vivo as the particles of barium sulfate dissociate from the surface of the catheter over time, leaving microfractures and other alterations of the polymeric structure and degrading the mechanical properties of the silicone and/or polyurethane.

27. Researchers have shown that catheter surface degradation in products featuring a radiopaque barium sulfate stripe is concentrated at the locus of the stripe.[2]

28. The mechanical integrity of barium sulfate-impregnated silicone and/or polyurethane is affected by the concentration of barium sulfate as well as the heterogeneity of the modified polymer.

29. Upon information and belief, Defendants' manufacturing process in designing and constructing the catheter implanted in Plaintiff involved too high a concentration of barium sulfate particles for the polymer formulation, leading to improperly high viscosity of the admixed silicone or polyurethane before polymerization and causing improper mixing of barium sulfate particles within the polymer matrix.

30. This defect in the manufacturing process led to a heterogeneous modified polymer which led to an irregular catheter surface replete with fissure, pits and cracks.

31. The roughened catheter surface leads to the collection and proliferation of fibrinous blood products, thereby drastically increasing the risk of biofilm, infection, sepsis,

---

[2] *See* Hecker JF, Scandrett LA. Roughness and thrombogenicity of the outer surfaces of intravascular catheters.  J Biomed Mater Res. 1985;19(4):381-395. doi:10.1002/jbm.820190404

thrombosis, and occlusion.

32.   Although the surface degradation and resultant mechanical failure can be reduced or avoided with design modifications (e.g., using a higher grade radiopacity compound and/or encapsulating the admixed polymer within silicone or polyurethane), Defendants elected not to incorporate those design elements into the SmartPort.

33.   At all times relevant, Defendants misrepresented the safety of the SmartPort system, and negligently designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold the SmartPort system as safe and effective device to be surgically implanted to provide repeated access to the vascular system for the delivery of medications, intravenous fluids, parenteral nutrition solutions, and blood products.

34.   At all times relevant to this action, Defendants knew and had reason to know, that the SmartPort was not safe for the patients for whom they were prescribed and implanted, because once implanted the device was prone to infection, thrombosis, fracture, occlusion, migration, perforation of internal vasculature and otherwise malfunctioning.

35.   At all times relevant to this action, Defendants knew and had reason to know that patients implanted with a SmartPort device had an increased risk of suffering life threatening injuries, including but not limited to: infection; death; hemorrhage; cardiac/pericardial tamponade (pressure caused by a collection of blood in the area around the heart); cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; and perforations of tissue, vessels and organs, or the need for additional surgeries to remove the Defective Device.

36.   Soon after the SmartPort was introduced to market, which was years before Plaintiff was implanted with her device, Defendants began receiving large numbers of adverse event reports ("AERs") from health care providers reporting that the SmartPort was fracturing post-implantation and that fractured pieces were migrating throughout the human body, including to the heart and lungs. Defendants also received large numbers of AERs reporting that the SmartPort was found to have perforated internal vasculature. These failures were often associated with reports of severe patient injuries such as:

6

a. Hemorrhage;

b. Infection/ sepsis;

c. Thrombosis;

d. Cardiac/pericardial tamponade;

e. Cardiac arrhythmia and other symptoms similar to myocardial infarction;

f. Severe and persistent pain;

g. Perforations of tissue, vessels, and organs; and

h. Upon information and belief, even death.

37. In addition to the large number of AERs which were known to Defendants and reflected in publicly accessible databases, there are many recorded device failures and/or injuries related to the Defendants' implantable port products which were concealed from medical professionals and patients through submission to the FDA's controversial Alternative Summary Reporting ("ASR") program.

38. The FDA halted the ASR program after its existence was exposed by a multi-part investigative piece, prompting a widespread outcry from medical professionals and patient advocacy groups.[3]

39. Prior to the discontinuation of the ASR program, Defendants reported numerous episodes of failures of their implanted port/catheter products – including numerous episodes of thrombosis and fracture– under the ASR exemption, thereby concealing them from physicians and patients.

40. Defendants were aware or should have been aware that the SmartPort had a substantially higher failure rate than other similar products on the market, yet Defendants failed to warn consumers of this fact.

41. Defendants also intentionally concealed the severity of complications caused by the SmartPort and the likelihood of these events occurring.

42. Rather than alter the design of the SmartPort to make it safer or adequately

---

[3] Christina Jewett, *Hidden Harm: Hidden FDA Reports Detail Harm Caused by Scores of Medical Devices*, Kaiser Health News (Mar. 2019).

7

warn physicians of the dangers associated with the SmartPort, Defendants continued to actively and aggressively market the SmartPort as safe, despite their knowledge of numerous reports of infection, fracture, thrombosis, occlusion and associated injuries.

43. Moreover, Defendants' warnings suggested that fracture of the device could only occur if the physician incorrectly placed the device such that undue catheter compression or "pinch-off" was allowed to occur. In reality, Defendants knew internally that these devices were fracturing and causing serious injuries due to defects in the design, manufacturing, and lack of adequate warnings.

44. Moreover, Defendants concealed-and continue to conceal-their knowledge of the SmartPort's dangerous propensity to precipitate infection, thrombosis, occlusion, and other serious injuries. Defendants further concealed their knowledge that the catheter design caused these failures and that these failures cause serious injuries.

45. The conduct of Defendants, as alleged in this Complaint, constitutes willful, wanton, gross, and outrageous corporate conduct that demonstrates a conscious disregard for the safety of Plaintiff. Defendants had actual knowledge of the dangers presented by the SmartPort, yet consciously failed to act reasonably to:

   a. Adequately inform or warn Plaintiff, her prescribing physicians, or the public at large of these dangers;

   b. Establish and maintain an adequate quality and post-market surveillance system; or

   c. Recall the SmartPort System from the market.

## SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF DONNA M. WEAVER

46. On or about September 18, 2024, Plaintiff DONNA M. WEAVER underwent an insertion of a right internal jugular vein central venous access port of an AngioDynamics SmartPort port catheter product, model number CT80LPPDVI, lot number 5826522. Upon information and belief, this SmartPort device consisted of a port body and a polyurethane catheter. The SmartPort was implanted at Mercy Medical Center in Redding, California.

47. Plaintiff and her health care providers used the SmartPort in a normal,

8

customary, intended, and foreseeable manner, namely as a surgically placed device used to make it easier to deliver medications directly into the Plaintiff's bloodstream. Moreover, Plaintiff's health care providers did not place or maintain the device incorrectly such that it caused the device to "pinch off" or otherwise malfunction.

48.     Defendants, directly or through their agents, apparent agents, servants, or employees designed, manufactured, marketed, advertised, distributed, and sold the SmartPort that was implanted in Plaintiff.

49.     Defendants manufactured, sold, and/or distributed the SmartPort to Plaintiff, through her doctors, to be used for vein access.

50.     On or about November 4, 2024, Plaintiff presented to Mercy Medical Center for pain and was diagnosed with an infection caused by her SmartPort device. This ultimately resulted in the removal of her SmartPort device on November 8, 2024, at Mercy Medical Center. These injuries were directly and proximately caused by the wrongful conduct of the Defendants and the unreasonably dangerous and defective nature of her SmartPort, as further alleged herein.

51.     At all times, the SmartPort was utilized and implanted in a manner foreseeable to Defendants, as Defendants generated the instructions for use and created procedures for implanting the product.

52.     The SmartPort implanted into Plaintiff was in the same or substantially similar condition as when it left the possession of Defendants, and in the condition directed by and expected by Defendants.

53.     Plaintiff and her physicians foreseeably used and implanted the SmartPort, and did not misuse, or alter the SmartPort in an unforeseeable manner.

54.     Defendants advertised, promoted, marketed, sold, and distributed the SmartPort as a safe medical device when Defendants knew or should have known the SmartPort was not safe for its intended purpose and that the product could cause serious medical problems, including infections.

55.     Defendants had sole access to material facts concerning the defective nature of the products and their propensity to cause serious and dangerous side effects.

9

56.    In reliance on Defendants' representations, Plaintiff's doctors were induced to, and did use the SmartPort.

57.    As a result of having the SmartPort implanted, Plaintiff sustained the aforementioned injuries, sustained significant mental and physical pain and suffering, suffered permanent injury, permanent and substantial physical deformity, underwent corrective surgery or surgeries, and suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses.

58.    Defendants' SmartPort was marketed to the medical community and to patients as safe, effective, reliable, medical devices; implanted by safe and effective, minimally invasive surgical techniques for the treatment of medical conditions, and as a safer and more effective as compared to the traditional products and procedures for treatment, and other competing Vascular Access Devices.

59.    The Defendants have marketed and sold the SmartPort to the medical community at large and patients through carefully planned, multifaceted marketing campaigns and strategies. These campaigns and strategies include, but are not limited to, direct to consumer advertising, aggressive marketing to health care providers at medical conferences, hospitals, private offices, and/or group purchasing organizations, and include a provision of valuable consideration and benefits to the aforementioned.

60.    The injuries, conditions, and complications suffered due to Defendants' SmartPort include but are not limited to infections; hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; severe and persistent pain; perforations of tissue, vessels and organs; and even death.

61.    Defendants were negligent toward Plaintiff in the following respects:

    a. Defendants failed to design and establish a safe and effective product;

    b. Defendants failed to establish a safe, effective procedure for removal of the SmartPort; therefore, in the event of a failure, injury, or complications, it is difficult to safely remove the SmartPort;

    b. Defendants provided incomplete, insufficient, and misleading information to physicians in order to increase the number of physicians using the SmartPort

for the purpose of increasing their sales. By so doing, Defendants caused the dissemination of inadequate and misleading information to patients, including the Plaintiff.

62. The SmartPort was utilized and implanted in a manner foreseeable to Defendants.

63. The SmartPort implanted into Plaintiff was in the same or substantially similar condition as when it left the possession of the Defendants, and in the condition directed by the Defendants.

64. At the time of her operation, Plaintiff was not informed of, and had no knowledge of the complaints, known complications, and risks associated with the SmartPort.

65. Plaintiff was never informed by Defendants of the defective and dangerous nature of the SmartPort.

66. At the time of her implant, neither Plaintiff nor Plaintiff's physicians were aware of the defective and dangerous condition of the SmartPort.

67. As a direct and proximate result of the defective SmartPort and the wrongful acts and omissions of the Defendants as alleged herein, Plaintiff was injured due to the use of the SmartPort, which caused Plaintiff various physical, mental, and emotional injuries and damages.

68. All causes of action contained in this Complaint pertain to the injuries Plaintiff suffered from the aforementioned SmartPort.  Regarding the port at issue, Plaintiff had no knowledge, nor did she have any reason to know, that she had suffered any injury and her cause of action did not accrue until, at the earliest, she was diagnosed with the aforementioned infection on or about November 5, 2024.  Accordingly, Plaintiff's claim relating to the SmartPort device at issue is timely filed under California's two year statute of limitations.

**<u>FIRST CAUSE OF ACTION</u>**

**<u>NEGLIGENCE</u>**

(Against All Defendants)

11

69.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

70.     The Defendants owed Plaintiff a duty to exercise reasonable care when designing, manufacturing, marketing, advertising, distributing, selling, and conducting post-market surveillance of the SmartPort.

71.     The Defendants failed to exercise due care under the circumstances and therefore breached this duty by:

    a. Failing to properly and thoroughly test the SmartPort before releasing the device to market, and/or failing to implement feasible safety improvements;

    b. Failing to properly and thoroughly analyze the data resulting from any pre-market testing of the SmartPort;

    c. Failing to conduct sufficient post-market testing and surveillance of the SmartPort;

    d. Designing, manufacturing, marketing, advertising, distributing, and selling the SmartPort to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of the SmartPort and without proper instructions to avoid the harm which could foreseeably occur as a result of using the SmartPort;

    e. Failing to exercise due care when advertising and promoting the SmartPort; and

    f. Negligently continuing to manufacture, market, advertise, and distribute the SmartPort after Defendants knew or should have known of its adverse effects.

72.     As a direct and proximate result of the Defendants' negligence in one or more of the foregoing manners, Plaintiff was injured as aforesaid due to the use of her SmartPort, which caused Plaintiff the aforementioned physical, mental, emotional and economic injuries and damages.

**<u>SECOND CAUSE OF ACTION</u>**

**<u>STRICT PRODUCTS LIABILITY – FAILURE TO WARN</u>**

(Against All Defendants)

73.     Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

74.     Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the SmartPort, including the device implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers, and therefore had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

75.     At the time Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the device was defective and presented a substantial danger to users of the product when put to its intended and reasonably anticipated use, namely as an implanted port/catheter system to administer the medications. Defendants failed to adequately warn of the device's known or reasonably scientifically knowable dangerous propensities, and further failed to adequately provide instructions on the safe and proper use of the device.

76.     Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the SmartPort that was implanted into Plaintiff that the SmartPort posed a significant and higher risk than other similar devices of device failure and resulting serious injuries.

77.     Defendants failed to timely and reasonably warn of material facts regarding the safety and efficacy of the SmartPort; no reasonable health care provider, including Plaintiff's, or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers or the consumers of the device.

78.     The warnings, labels, and instructions provided by the Defendants at all times relevant to this action, are and were inaccurate, intentionally misleading, and misinformed and misrepresented the risks and benefits and lack of safety and efficacy associated with the device.

79.     The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

13

80. The device, which was designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold into the stream of commerce by Defendants, was defective at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

81. When Plaintiff was implanted with the device, Defendants failed to provide adequate warnings, instructions, or labels regarding the severity and extent of health risks posed by the device, as discussed herein.

82. Defendants intentionally underreported the number and nature of adverse events associated with dislodgement and migration of the device to Plaintiff's health care providers, as well as the FDA.

83. Neither Plaintiff nor her health care providers knew of the substantial danger associated with the intended and foreseeable use of the device as described herein.

84. Plaintiff and her health care providers used the SmartPort in a normal, customary, intended, and foreseeable manner, namely as a surgically placed device used to make it easier to deliver medications directly into the Plaintiff's bloodstream. Moreover, Plaintiff's health care providers did not place or maintain the device incorrectly such that it caused the device to "pinch off" or otherwise malfunction.

85. Upon information and belief, the defective and dangerous condition of the device, including that implanted into Plaintiff, existed at the time it was manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold by Defendants to distributors and/or healthcare professionals or organizations. Upon information and belief, the device implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

86. Defendants' lack of sufficient warning and/or instructions was the direct and proximate cause of Plaintiff's aforementioned serious physical, mental, emotional and economic injuries and damages in an amount to be determined at trial. In other words, had Defendants provided adequate warnings, Plaintiff and her physicians would not have used the device.

## THIRD CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

(Against All Defendants)

87. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

88. The SmartPort implanted in Plaintiff was not reasonably safe for its intended use and was defective with respect to its design.

89. The SmartPort was in a defective condition at the time it left the possession or control of Defendants.

90. The SmartPort was unreasonably dangerous to the user or consumer.

91. The SmartPort was expected to and did reach the consumer without substantial change in its condition.

92. Defendants are strictly liable to the Plaintiff for designing, manufacturing, marketing, labeling, packaging and selling defective products.

93. As a direct and proximate result of the SmartPort's aforementioned defects, Plaintiff was injured as aforesaid due to the use of the SmartPort, which caused Plaintiff the aforementioned physical, mental, emotional and economic injuries and damages.

## FOURTH CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

(Against All Defendants)

94. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

95. Defendants impliedly warranted that the SmartPort was merchantable and fit for the ordinary purposes for which it was intended.

96. When the SmartPort was implanted in Plaintiff, it was being used for the ordinary purpose for which it was intended.

97. Plaintiff, individually and/or by and through her physicians, relied upon Defendants' implied warranties of merchantability in consenting to have the SmartPort implanted.

15

98.    Defendants breached these implied warranties of merchantability because the SmartPort implanted in Plaintiff was neither merchantable nor suited for its intended use as warranted.

99.    Defendants' breaches of their implied warranties resulted in the implantation of unreasonably dangerous and defective SmartPort in Plaintiff's body, placing said Plaintiff's health and safety in jeopardy.

100.    The SmartPort was sold to Plaintiff's health care providers for implantation in patients, such as Plaintiff.

101.    As a direct and proximate result of the SmartPort's aforementioned defects, Plaintiff was injured due to the use of the SmartPort, which caused Plaintiff the aforementioned physical, mental, and emotional injuries and damages.

102.    Upon information and belief, Plaintiff's healthcare providers sent notice to Defendants of the adverse events that occurred to Plaintiff and thus, the nonconformity of the SmartPort, within a reasonable period of time following discovery of the breach of warranty and before suit was filed.

## FIFTH CAUSE OF ACTION
## BREACH OF EXPRESS WARRANTY

(Against All Defendants)

103.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

104.    Defendants through their officers, directors, agents, representatives, and written literature and packaging, and written and media advertisement, expressly warranted that the SmartPort was safe and fit for use by consumers, was of merchantable quality, did not produce dangerous side effects, and was adequately tested and fit for its intended use.

105.    The SmartPort did not conform to the Defendants' express representations because it is not reasonably safe, has numerous serious side effects, and causes severe and permanent injury.

106.    At all relevant times, the SmartPort did not perform as safely as an ordinary consumer would expect, when used as intended or in a reasonably foreseeable manner.

107.   Plaintiff, her physicians, and the medical community reasonably relied upon the Defendants' express warranties for the SmartPort.

108.   At all relevant times, the SmartPort was used on Plaintiff by Plaintiff's physicians for the purpose and in the manner intended by Defendants.

109.   Plaintiff and Plaintiff's physicians, by the use of reasonable care, could not have discovered the breached warranty and realized its danger.

110.   As a direct and proximate result of the SmartPort's aforementioned defects, Plaintiff was injured as aforesaid due to the use of the SmartPort, which caused Plaintiff the aforementioned physical, mental, and emotional injuries and damages.

111.   Upon information and belief, Plaintiff's healthcare providers sent notice to Defendants of the adverse events that occurred to Plaintiff and thus, the nonconformity of the SmartPort, within a reasonable period of time following discovery of the breach of warranty and before suit was filed.

## SIXTH CAUSE OF ACTION
## FRAUDULENT CONCEALMENT
(Against All Defendants)

112.   Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

113.   Defendants fraudulently concealed information with respect to the SmartPort in the following particulars:

a. Defendants represented through the labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that the SmartPort was safe and fraudulently withheld and concealed information about the substantial risks of using the SmartPort;

b. Defendants represented that the SmartPort was safer than other alternative systems and fraudulently concealed information which demonstrated that the SmartPort was not safer than alternatives available on the market;

c. Defendants concealed that it knew these devices were fracturing and migrating from causes other than the manner in which the implanting

17

physician implanted the device; and

d. That frequency of these failures and the severity of injuries were substantially worse than had been reported.

114. The Defendants had sole access to material facts concerning the dangers and unreasonable risks of the SmartPort.

115. The concealment of information by the Defendants about the risks of the SmartPort was intentional, and the representations made by Defendants were known by Defendants to be false.

116. The concealment of information and the misrepresentations about the SmartPort was made by the Defendants with the intent that Plaintiff's health care providers and Plaintiff rely upon them.

117. Plaintiff and her physicians relied upon the representations and were unaware of the substantial risks of the SmartPort which the Defendants concealed from the public, including Plaintiff and her physicians.

118. As a direct and proximate result of the SmartPort's aforementioned defects, Plaintiff was injured as aforesaid due to the use of the SmartPort, which caused Plaintiff the aforementioned physical, mental, emotional and economic injuries and damages.

119. Had Defendants not concealed this information, neither Plaintiff nor her health care providers would have consented to using the device in Plaintiff.

**SEVENTH CAUSE OF ACTION**

**CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT**

120. Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

121. The acts and practices engaged in by Defendants constitute unlawful, unfair, deceptive, and/or fraudulent business or trade practices in violation of the Consumers Legal Remedies Act, Cal. Civ. Code Ann. § 1750 (West), *et seq*. (the "CLRA").

122. Defendants engaged in in unlawful practices, including deception, false promises, misrepresentation, and/or concealment, suppression, or omission of material facts in connection with the sale, distribution, and/or advertisement of the SmartPort in violation

18

of the CLRA.

123.    Defendants further engaged in unfair, unconscionable, deceptive, deliberately misleading, false, and/or deceptive acts and practices, all in violation of the CLRA, and as further described herein, including, but not limited to, misrepresenting that the SmartPort was reasonably safe for use and failing to adequately disclose the substantial risk of infection and harm the product entailed given the large number of adverse events Defendants knew or should have been aware of but did not adequately disclose to Plaintiff.

124.    Defendants intended for Plaintiff, Plaintiff's physicians, and other consumers to rely on their deceptive practices in order to continue selling and manufacturing the SmartPort.

125.    Defendants' conduct was in or affecting commerce, namely, Defendants sold, and Plaintiff purchased the SmartPort, a product that Defendants falsely represented as having certain characteristics and benefits it did not have, inter alia, that it was reasonably safe for use, as further set forth above, in violation of the CLRA.

126.    As a result of Defendants' conduct, Plaintiff suffered actual damages in that the product she purchased was misrepresented and worth far less than the product she thought she had purchased, had Defendants' representations been true.

## EIGHTH CAUSE OF ACTION

## LOSS OF CONSORTIUM

(Against All Defendants)

127.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

128.    At all times here and alleged, Plaintiff ROBERT WEAVER was and is legally married to Plaintiff DONNA M. WEAVER.

129.    As a direct and proximate result of the conduct by Defendants as herein alleged, that all injuries and damages to Plaintiff DONNA M. WEAVER were caused solely and proximately by the negligence and wrongful actions of Defendants.

130.    As a result of the wrongful and negligent acts of the Defendants, and each of them, the Plaintiff ROBERT WEAVER was caused to suffer, and will continue to suffer in

19

the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of her marital relationship with Plaintiff DONNA M. WEAVER.

## NINTH CAUSE OF ACTION

### PUNITIVE DAMAGES

(Against All Defendants)

131.    Plaintiffs incorporate by reference the preceding paragraphs of this Complaint as if fully set forth herein.

132.    Plaintiffs are entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete conscious and/or totally reckless disregard for the public safety and welfare.    Defendants intentionally and fraudulently misrepresented facts and information to both the healthcare community and the general public, including Plaintiff and her health care providers, by making intentionally false and fraudulent misrepresentations about the safety and efficacy of the SmartPort. Defendants intentionally concealed the true facts and information regarding the serious risks of harm associated with the implantation of said product, and intentionally downplayed the type, nature, and extent of the adverse side effects of being implanted with the device, despite Defendants' knowledge and awareness of the serious and permanent side effects and risks associated with use of same. Defendants further intentionally sought to mislead health care providers and patients, including Plaintiff and her health care providers, regarding the cause of her injuries and failures of the SmartPort.

133.    Defendants had knowledge of and were in possession of evidence demonstrating that the SmartPort caused serious physical side effects. Defendants continued to market said product by providing false and misleading information with regard to the product's safety and efficacy to the regulatory agencies, the medical community, and consumers of the SmartPort, notwithstanding Defendants' knowledge of the true serious side effects of the SmartPort, Defendants failed to provide accurate information and warnings to the healthcare community that would have  dissuaded  physicians  from

20

surgically implanting the SmartPort and consumers from agreeing to being implanted with the SmartPort, thus depriving physicians and consumers from weighing the true risks against the benefits of prescribing and implanting the SmartPort.

134.   As a direct, proximate, and legal result of Defendants' acts and omissions as described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered, and will continue to suffer, the injuries and damages described in this Complaint.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for compensatory and special damages together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## **PRAYER**

**WHEREFORE**, Plaintiffs pray for judgment in an amount in excess of $75,000.00 against each of the Defendants as follows:

    a.  Judgment be entered against all Defendants on all causes of action of this Complaint;

    b.  Full, fair, and complete recovery for all claims and causes of action relevant to this action;

    c.  General damages according to proof at the time of trial;

    d.  Special damages, including past, present, and future medical expenses, and all other economic harm, according to proof at the time of trial;

    e.  As to the Eighth Cause of Action, Loss of Consortium damages;

    f.  Punitive or exemplary damages according to proof at the time of trial;

    g.  Pre-judgment and post-judgment interest;

    h.  The costs and the expenses of this litigation incurred herein; and

    i.  For such other and further relief as the Court may deem just and proper.

Dated: February 13, 2026

                            Respectfully submitted,

                    By:   */s/ Michael S. Kruse*
                          Michael S. Kruse

(admitted *pro hac vice*)
Niemeyer, Grebel & Kruse, LLC
211 N. Broadway, Suite 2950
St. Louis, MO 63102
314-241-1919 (T)
314-665-3017 (F)
kruse@ngklawfirm.com

*Attorneys for Plaintiffs*

## **DEMAND FOR JURY TRIAL**

Plaintiff DONNA M. WEAVER and Plaintiff ROBERT WEAVER hereby demand a jury trial on all counts in this Complaint.

Respectfully submitted,

By:   */s/ Michael S. Kruse*
Michael S. Kruse
(admitted for *pro hac vice*)
Niemeyer, Grebel & Kruse, LLC
211 N. Broadway, Suite 2950
St. Louis, MO 63102
314-241-1919 (T)
314-665-3017 (F)
kruse@ngklawfirm.com

*Attorneys for Plaintiffs*